## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

RUTH ELLEN REEVES,

      Plaintiff,

v.                                                                   Case No.  3:17-cv-976-MCR/MJF

NANCY A. BERRYHILL,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

This case is before this court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-83.[1]

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

---

[1] This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq.*

## I.   Procedural History

On March 4, 2015, Plaintiff filed an application for supplemental security income benefits ("SSI"). (Tr. 62).[1] In her application, she alleged that her disability began on May 1, 2014. (Tr. 192). Her application was denied initially on March 26, 2015, and on reconsideration on May 22, 2015. (Tr. 11). Thereafter, she requested a hearing before an administrative law judge ("ALJ"). On May 4, 2017, the assigned ALJ conducted a video hearing. On May 26, 2017, the ALJ issued a decision in which he found Plaintiff "not disabled," as defined under the Act, at any time through the date of his decision. (Tr. 11-21). On November 30, 2017, the Appeals Council denied Plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

## II.   Findings of the ALJ

In denying Plaintiff's claims, the ALJ made the following findings relevant to the issues raised in this appeal:

---

[1] All references to "Tr." refer to the transcript of Social Security Administration record filed on April 25, 2018. (Docs. 10, 11). Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

(1)    The Plaintiff has not engaged in substantial gainful activity since March 4, 2015, the date she applied for SSI.

(2)    Plaintiff has the following severe impairments: degenerative disc disease, cervical/lumbar; s/p triple discectomy with fusion in 2007 and cervical re-injury in April 2014; arthritis. Plaintiff has diabetes, but it is controlled with medication. Thus, diabetes is a non-severe impairment.

(3)    The Plaintiff does not have an impairment or combination that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(4)    Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 416.967(b) except she cannot climb ladders, ropes or scaffolds, or work around unprotected heights or dangerous equipment; she cannot tolerate more than occasional exposure to temperature extremes, humidity, wetness, and concentrated environmental pollutants.

(5) Plaintiff's allegation of debilitating pain in her lumbar spine, pain in her neck, and pain in her hands, and other symptoms were not considered credible to the extent it was not entirely supported by the objective medical records.

(6)    Plaintiff is able to perform past relevant work.

(7)    On the date the application was filed, Plaintiff was 54 years old, which is defined as an individual closely approaching advanced age.

(8)    Plaintiff has at least a high school education and is able to communicate in the English language.

(9)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.

(10)    Plaintiff had not been under a disability, as defined in the Social Security Act, since March 4, 2015, the date the application was filed.  (Tr. 13-19).

## III.    Standard of Review

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will

not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); *Lewis*, 125 F.3d at 1439; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Lewis*, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). Pursuant to 20 C.F.R. § 404.1520(a)–(g),[3] the Commissioner analyzes a disability claim in five steps:

1.    If the claimant is performing substantial gainful activity, she is not disabled.

2.    If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.    If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.    If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks disability insurance benefits ("DIB") or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims. *See* 20 C.F.R. §§ 404, 416. Therefore, citations in this report and recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

5.    Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV.    Plaintiff's Employment and Medical History

### A.    <u>Relevant Medical History</u>

In April 2014, Dr. Sharon Fawaz, D.O., treated the Plaintiff for injuries resulting from an automobile accident. Dr. Fawaz's medical treatment notes indicate that Plaintiff complained of migraines, nausea, and back and neck pain. (Tr. 485-505). The notes also indicate that Dr. Fawaz made a neurology referral for a CT scan of Plaintiff's head and neck. (Tr. 491). Dr. Fawaz also recommended that Plaintiff attend physical therapy. (Tr. 499). Treatment records from Dr. Fawaz indicate that Plaintiff's neck and lower back pain were treated with medication and injections.

(Tr. 485-505). In September 2014, Dr. Fawaz declined to write a letter requesting that Plaintiff's daughter, who was in the Army, be transferred to a location that would permit her to care for the Plaintiff because, according to Dr. Fawaz, the Plaintiff was "able to care for herself, drive and doesn't need any assistance for day to day routines." (Tr. 494).

The records also indicate that Plaintiff attended physical therapy from June 2014 through November 2014 at Twin City Physical Therapies. (Tr. 1089-96). In the initial evaluation on June 2, 2014, the physical therapist noted that Plaintiff reported not having pain until the accident. (Tr. 459). The physical therapist also noted that Plaintiff had mild cervical and lumbar spine pain with range of motion, and that the range of motion was within functional limits. (Tr. 458). Plaintiff reported numbness and tingling in her hands and feet. (Tr. 458). Plaintiff related that she could bathe, dress herself, and prepare meals. But Plaintiff reported she had difficulty sitting with a computer in her lap. The therapist recommended a home exercise program and skilled physical therapy. (Tr. 458). There are no records indicating that Plaintiff attended physical therapy after November 2014. (1104-07). The physical therapist said that Plaintiff had completed twenty sessions of physical therapy, but that Plaintiff chose not continue therapy. (Tr. 1089).

In November 2014, Plaintiff also underwent diagnostic imaging of her brain and neck. (Tr. 474-75). Medical records note that Plaintiff had a remote history of

cervical fusion (2007), which the Plaintiff alleges was reinjured in the motor vehicle accident. (Tr. 475). Results of her brain scan showed "no significant abnormality." Plaintiff was advised that if unexplained symptoms persisted, she should seek an MRI examination of her brain. (Tr. 474). The results from her neck scan showed a degenerative change involving the spine and that plaintiff was status post fusion from the level of C5 to the level of C7 with mild smooth ventral impressions upon the thecal sac at those levels and fixation of hardware. (Tr. 475).

Results from an MRI of Plaintiff's spine showed that there were postsurgical changes of the cervical spine. (Tr. 479). The results also showed that Plaintiff's cervical cord was normal in caliber and signal intensity. (Tr. 481). It also showed that there was an impression of a small disc protrusion at C2-3 and C4-5. At L1-2 there was a mildly diffuse disc bulge, but no evidence of spinal stenosis nor neural foraminal. (Tr. 479-484).

From August 21, 2013 to February 3, 2015, Plaintiff also received treatment from Dr. John Sites, M.D., at the Magnolia Medical Center. (Tr. 506-530). Recordings indicate that a bone densitometry was conducted on August 21, 2013. (Tr. 511-12). The results showed mild osteopenia. (Tr. 514). The treatment records through February 3, 2015, showed that claimant had normal strength, balance, gait, and musculoskeletal findings. (Tr. 512-24). Dr. Sites's assessment included essential hypertension, Type 2 diabetes mellitus, cervical spondylosis, and migraine

headaches. (Tr. 516). The treatment plan included Topamax 25 mg, Maxalt 10 mg at the onset of a headache, and Lancet as needed for Plaintiff's diabetes mellitus. (Tr. 516).

Plaintiff also reestablished her treatment at the Magnolia Medical Clinic in December 2015. (Tr. 1108-14). These records indicate that Plaintiff had overall normal musculoskeletal findings. (Tr. 1112). The records show that that Plaintiff had normal strength, gait, stance, and balance. (Tr. 1112). Dr. Sites's 2015 assessment include diagnoses of essential hypertension, Type 2 diabetes mellitus, hyperlipidemia, and being overweight. (Tr. 1112). On December 8, 2015, Dr. Sites referred Plaintiff to a neurologist for the reported ongoing migraines. Plaintiff, however, declined the referral. (Tr. 1113).

Plaintiff also received treatment at Eglin Air Force Base. This consisted of routine metabolic and urinalysis lab work from February 2013 to April 12, 2016. (Tr. 586-613). Plaintiff also routinely refilled her prescriptions from the Eglin Air Force Base. (Tr. 565-83, 678-79). Plaintiff also saw cardiologists at the Eglin Air Force Base for cardiovascular exams. (Tr. 678-684).

On March 4, 2017, Plaintiff was seen by Dr. Stephen Schwartz, M.D. (Tr. 1115-28). Dr. Schwartz indicated that Plaintiff demonstrated normal gait and station with full range of motion of joints. (Tr. 1117). Plaintiff refused to bend over and touch her toes, but Dr. Schwartz noted that her flexion and extension of spine was

normal. (Tr. 1117). Dr. Schwartz indicated that when testing Plaintiff's upper extremities, Plaintiff showed 100% mobility during passive and active movement. (Tr. 1117, 1120-22). Her muscle and tone were adequate. She had normal grip strength and fine manipulation. Her muscle bulk and strength, flexion, and extension and deviation were also normal. Her motor function was normal and with full range of motions of arms. (Tr. 1117-18). Dr Schwartz indicated that when testing Plaintiff's lower extremities, Plaintiff showed 100% mobility during active and passive movements. (Tr. 1118, 1120-22). Plaintiff was able to walk on her heels and toes without difficulty, and she could stand on one extremity with good balance. (Tr. 1118). Her muscle build and strength were normal. (Tr. 1118). Her straight leg-raising and inversion/eversion of the feet were normal. (Tr. 1118). Dr. Schwartz also noted that Plaintiff appeared comfortable and could change positions without difficulty. (Tr. 1118).

Based on his examination, Dr. Schwartz completed a Medical Source Statement. He estimated that Plaintiff could lift and/or carry 20 pounds continuously; he indicated, however, that the Plaintiff stated she did not carry anything. (Tr. 1123). He also estimated she could sit for 3 hours at one time and sit for a total of 6 hours of an 8-hour workday. (Tr. 1124). He noted she could stand and/or walk for two hours at one time with a total of three hours each for an 8-hour workday. He also stated she did not need a cane to ambulate. (Tr. 1124). He opined that her ability to

use bilateral hands and feet was unlimited. (Tr. 1125). He noted that the Plaintiff could frequently climb stairs, ramps, scaffold, and ladders. (Tr. 1126). He opined that Plaintiff should be restricted to moderate noise occasionally, but she was able to continuously tolerate exposure to moving mechanical parts, humidity, wetness, and pulmonary irritants. (Tr. 1127). He noted that she could frequently tolerate exposure to unprotected heights, temperature extremes and vibrations. (Tr. 1127). He stated that she could operate a motor vehicle. (Tr. 1127). He also opined that Plaintiff was able to shop, travel without a companion, ambulate without a wheelchair, chain or crutches, walk a block at a reasonable pace on rough or uneven surfaces, use public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare and eat a simple meal, care for her personal hygiene, and sort, handle, and use paper or files. (Tr. 1128).

### B.  **Relevant Hearing Testimony**

At Plaintiff's hearing, held May 4, 2017, she testified that she was 56 years old and had an associate degree. She testified that the last time she worked full time was in 2006. She testified that she stopped working after sustaining a severe injury to her neck, which had been broken on three levels. (Tr. 31). At the time she broke her neck, she had severe degenerative disc disease and liver problems. The Plaintiff testified that she reinjured her neck in a motor vehicle accident, which occurred in April 2014. The Plaintiff testified that she now suffers from pain every day, which

also wakes her up in the middle of the night. She testified that her liver, kidneys, and heart make it impossible for her to take medication. (Tr. 32). She testified that she had not received medical treatment for approximately one and one-half years because she lacked sufficient funds. In response to the ALJ's question whether she had been hospitalized, Plaintiff testified that she would not go to a hospital. (Tr. 33). She stated that she experienced pain in her neck, which causes migraines. She said that the neck pain also radiates down her shoulders. She also reported pain in her lower back, feet, and hands. (Tr. 33). She testified that her neck pain was a 10 out of 10, her back pain was an 8 out of 10, her foot pain was a 7 or 8 out of 10, and her hand pain was 10 out of 10. (Tr. 35). Plaintiff testified that her doctor had offered to perform carpal tunnel surgery, but Plaintiff declined to have surgery. (Tr. 35).

Plaintiff testified that:

- She could feed, bathe, and dress herself. (Tr. 36-37).

- She could shop for groceries and her daughter helped her.

- She could not sweep or mop, but that she could load the dishwasher.

- She could walk for about thirty minutes once a week, although sometimes when she was not having migraines, she could walk for thirty minutes twice a week. (Tr. 38).

- She does not stand for very long and she could not sit for more than thirty minutes. (Tr. 38-49).

- She could not carry more than five pounds due to the pain. (Tr. 39).

- She could grab small objects and reach overhead, she could push and pull items, she could climb steps one at a time, and she could push a grocery cart. (Tr. 40-41).

- She could not always bend over to pick up items. (Tr. 40).

The Plaintiff's daughter also testified at the hearing. The Plaintiff's daughter testified that her mother was significantly limited in tending to her basic daily activities. In explaining the limitations, Plaintiff's daughter explained that Plaintiff could not lift "anything unless its extremely light." (Tr. 44). She also said that Plaintiff got migraines and "all sorts of medical problems." (Tr. 44). In elaborating on Plaintiff's medical problems, Plaintiff's daughter testified that her mother broke her neck, has a shattered back, and a tumor in her head. (Tr. 44).

Additionally, a vocational expert ("VE") testified. The VE stated that the level of exertion and skill level of Plaintiff's past relevant jobs as a cashier and sales attendant were "light and unskilled," and as a customer service representative was "light and semi-skilled." (Tr. 46). The ALJ then asked the VE a hypothetical, which required the VE to consider an individual with the ability to perform a full range of medium work with occasional postural and manipulative limitations, and environmental limitations. The VE testified that such limitations would not prevent a person from returning to Plaintiff's previous work. The VE also testified that there

were significant jobs in the national economy, including: information clerk (light and unskilled), mail clerk or mail sorter (light and unskilled), parking lot attendant (light and unskilled), and office helper (light and unskilled). (Tr. 47). The Plaintiff then asked the VE to consider a person that had a broken neck, bone spurs, a severe case of degenerative disc disease, and liver failure. (Tr. 48-49). The VE testified that his answer would not change. (Tr. 49). The Plaintiff declined to ask the VE any further questions. (Tr. 49).

**V.    Discussion**

Plaintiff raises several issues on appeal. Specifically, Plaintiff alleges that:

(1) the ALJ failed to consider several conditions at step two and three of the analysis;

(2) the ALJ's determination that Plaintiff had an RFC to perform light work was unsupported by the evidence;

(3) the ALJ erred in determining that Plaintiff could perform past relevant work and whether there were a significant number of jobs in the national economy that Plaintiff could perform;

(4) the ALJ and VE were biased; and

(5) there is new evidence in support of her disability.

### A.   The ALJ's Alleged Failure to Consider Additional Impairments

#### 1.   *Step Two: Severe Impairments*

Plaintiff contends that the ALJ failed to consider impairments related to the Plaintiff's heart, liver, and kidneys in determining whether Plaintiff suffered from a severe impairment or combination of impairments at step two of the five step analysis.[2] (Doc. 13 at 4-5, 6, 9, 16-17, 19, 26, 28-29).

At step two of the analysis, the ALJ must consider if the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520; *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). If the ALJ concludes that the claimant's alleged impairment or combination of impairments are not severe, the ALJ must end the analysis and find that the claimant is "not disabled." 20 C.F.R. § 404.1520; *see*

---

[2] In her application for SSI benefits, Plaintiff did not allege that she is disabled due to her heart, liver, or kidney conditions. Plaintiff only alleged she was disabled due to: "(1) ruptured neck disc and back problems; (2) ruptured disc in neck; (3) triple discectomy with fusion—neck broke on 3 levels; (4) continued migraines after several months of migraine attacks; (4) diabetes—controlled; (5) arthritis in many parts of the body due to injuries; and (6) ruptured disc in lower back." (Tr. 64, 224). In her supplemental pain questionnaire, Plaintiff states that she cannot take medication because it was not worth impairing her kidneys and that a side effect of the medication was "possibly kidney failure" (Tr. 234). Notably, in the supplemental pain questionnaire, she did not mention her liver or her heart condition. Plaintiff mentioned her liver condition in her request for a hearing. Plaintiff, however, stated only that her other conditions are too painful, and she cannot take medication due to her kidneys and liver. She did not describe the nature of her liver condition and did not allege the possibility of kidney failure. (Tr. 88).

*Jamison*, 814 F.2d at 588 (Step two "acts as a filter; if no severe impairment is shown the claim is denied"); *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (holding that step two is a threshold inquiry, which allows "only claims based on the most trivial impairments to be rejected").

To proceed to step three, the ALJ need only identify one severe impairment. *See Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 675 ("The finding of 'any severe impairment' is sufficient for the ALJ to proceed to the third step."); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("[I]t is apparent that there is no need for an ALJ to identify every severe impairment at step two."); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010); *Jamison*, 814 F.2d at 588 (noting that the ALJ correctly identified at least one severe impairment and correctly proceeded to step three). So long as the ALJ provides that he has taken all of Plaintiff's impairments into consideration when determining the Plaintiff's capacity to work at steps three and beyond, any omission during step two is of no consequence. *Tuggerson-Brown*, 572 F. App'x at 951-52; *Perry v. Astrue*, 280 F. App'x 887, 893-94 (11th Cir. 2008).

The ALJ did not discuss all of Plaintiff's alleged conditions at step two of the sequential process, but he ruled in Plaintiff's favor at step two. (Tr. 13). The ALJ found that the evidence supported the conclusion that the Plaintiff suffered from at least three severe impairments: (1) degenerative disc disease, cervical/lumbar; (2)

s/p triple discectomy with fusion in 2007 and cervical re-injury in April 2014; and (3) arthritis. The ALJ then proceeded to step three of the analysis. (Tr. 14). Even assuming that Plaintiff's other alleged conditions are "severe," the ALJ's recognition of these conditions would not have altered the step two analysis. *See Flemming*, 635 F. App'x at 675; *Tuggerson-Brown*, 572 F. App'x at 951-52. Thus, Plaintiff has failed to establish that the ALJ committed error at step two of the analysis.

### 2.    *Step Three: Severe Impairments Equal to a Listed Impairment*

Plaintiff also alleges that the ALJ did not properly consider the combination of all her alleged impairments at step three of the analysis. (Doc. 13 at 16-17).

"At step three the ALJ must determine if the applicant has a severe impairment or a combination of impairments, whether severe or not, that qualify as a disability." *Jamison*, 814 F.2d at 588. At this stage, the applicant's medical condition must be taken as a whole. *Id.* (citing *Hudson v. Heckler*, 755 F.2d 781, 785 & n.2 (11th Cir. 1985); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)); *see Tuggerson-Brown*, 572 F. App'x. at 952 ("While the ALJ did not need to determine whether every alleged impairment was 'severe,' he was required to consider all impairments regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation."). The Plaintiff still retains the burden of proof to establish that her impairments restrict her from doing work. 20 C.F.R. § 404.1512(a), (c) (instructing claimant that ALJ will consider "only impairment(s)

you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled"); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (holding that the claimant bears the burden of proving her disability and is therefore responsible for producing evidence to support of her claim); *Rothfeldt v. Acting Comm'r of the Soc. Sec. Admin.*, 669 F. App'x 964, 967 (11th Cir. 2016) ("In the third step of the sequential evaluation process, *the claimant must provide specific evidence that his impairment meets or medically equals a listed impairment*.") (citing *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990) (emphasis added)).

Plaintiff alleges error in various aspect of the ALJ's assessment, but she fails to point to evidence that would have had any material impact on the ALJ's analysis. In rejecting the Plaintiff's claim of disability, the ALJ stated that the "evidence, more fully discussed below" established that that Plaintiff had several severe impairments, but that the Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 13-14).

As discussed above, in her application for benefits, the Plaintiff did not allege that she suffered from the following impairments: (1) permanent whiplash; (2) heart attack or an enlarged heart; (3) stage-three renal failure; (4) micro and

macrovesicular steatosis, which could cause the liver to explode; and (5) several other alleged impairments. Plaintiff's recent medical record indicates that Plaintiff was diagnosed recently with micro and macrovesicular steatosis. (Tr. 32, 368, 515, 710, 713, 715, 1113, 1115). The record also reflects she was diagnosed with coronary artery disease and heart disease. (Tr. 1113, 1115). Her recent medical records do not address any issues related to renal failure, however. (Tr. 368, 489, 499, 514-16, 519).[3]

Even assuming that Plaintiff was diagnosed with renal failure as well as her other impairments, Plaintiff's attempt to rely on a diagnosis to establish a disability misses the mark. (Doc. 13 at 2, 4, 9, 16-17, 25-26). These records do not reflect that these medical conditions cause the Plaintiff any *work-related limitations*. (Tr. 32, 368, 515, 710, 713, 715, 1113). Under the regulations, a disability is determined by the extent to which a claimant's ability to work is *limited* by an impairment, not the fact that she suffers from a number of medical conditions. *See Russel v. Astrue*, 331 F. App'x. 678, 681 (11th Cir. 2009) (rejecting a claim where the plaintiff asserted that her high blood pressure caused her to be disabled but failed to point to any

---

[3] There is, however, a medical record that indicates that Plaintiff reported having "kidney problems." (Tr. 458). Plaintiff attempts to rely on laboratory results to show that she has kidney failure; however, these records do not contain an opinion from medical personal interpreting the lab results or any medical opinion as to how the alleged kidney failure limits the Plaintiff. (Tr. 416-19, 595-96, 600-02, 605, 610, 615, 618, 621).

documentation in her medical records demonstrating how it might so cause disability); *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (holding that "the mere existence of . . . impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard"); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (holding that the severity of an impairment "must be measured in terms of its effect upon the ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality"). Thus, a mere diagnosis is not enough to establish a disability. The only evidence of limitations from these conditions come from Plaintiff's own testimony, which the ALJ considered in his analysis and found to be only partially credible. (Tr. 17).

Finally, the ALJ also discussed Plaintiff's migraines and found that there "is no evidence . . . of functional limitations related" to the migraines in the medical records. (Tr. 16). He also found that the "medical record contains little useful evidence regarding the claimant's response to appropriate treatment or the residual impact of her symptoms on her work-related functions" regarding Plaintiff's alleged cervical and lumbar pain resulting from the "mildly diffuse disc bulge." (Tr. 16-17).

Thus, to the extent that the ALJ considered these impairments as part of his consideration of the entire record, he did not find that they constituted a combination of severe impairments that met a listed impairment. *See Prince v. Comm'r*, 551 F.

App'x. 967, 971 (11th Cir. 2014) (finding no error in the ALJ's failure "to make detailed findings or explicitly discuss whether [the claimant's] impairments met or equaled a Listing" because the finding could be implied from the ALJ's discussion of relevant medical evidence); *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); *Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding that the ALJ implicitly found that the claimant did not meet a Listing because it was clear from the record that the ALJ had considered the relevant law and evidence). Accordingly, Plaintiff has failed to establish that the ALJ erred at step three.

### B.    Plaintiff's Residual Functional Capacity

Plaintiff also contends that the ALJ's finding that Plaintiff had the RFC to perform light work was not supported by substantial weight of the evidence. Plaintiff takes issue with the ALJ's decision to: (1) give partial weight to Dr. Schwartz and little weight to Dr. Efren Baltazar; (2) rely on Plaintiff's conservative treatment; and (3) discredit the Plaintiff's subjective complaints of pain.

The ALJ found that the Plaintiff had the RFC to perform light work as defined by the regulation except she could not: (1) climb ladders, ropes, or scaffolds; (2) work around unprotected heights or dangerous equipment; (3) tolerate more than occasional exposure to temperature extremes, humidity, wetness, and concentrated environmental pollutants. Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10

pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or legal controls. . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors." 20 C.F.R. § 416.967(b). For the reasons discussed below, the ALJ did not err in determining that Plaintiff had the RFC to perform light work with additional limitations as set forth in the ALJ's decision.

An ALJ's RFC assessment is to be based upon all relevant evidence of a claimant's ability to do work despite her impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). Proper evidence to rely upon in making this determination includes—among other things—opinions by treating physicians, treatment records, reports by consultative physicians, and the plaintiff's subjective complaints. *See Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (noting that ALJ properly determined a claimant's RFC by evaluating claimant's complaints, the treating physician's opinions, and a state agency physician); *Lewis*, 125 F.3d at 1440 (discussing treating physician and consulting physician's opinions in determining the claimant's RFC); *Dixon v. Massanari,* 270 F.3d 1171, 1178 (7th Cir. 2001) (upholding ALJ's RFC determination that claimant could perform sedentary work with a sit/ stand option was held to be supported by

both the medical and nonmedical evidence in the record, including claimant's own testimony, her "only intermittent" visits to the doctor, non-use of strong pain medication, and physician's observation that she had a "fairly good range of motion and muscle strength").

In making the RFC determination, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quotations omitted). Thus, the ALJ should analyze all the evidence and sufficiently address the "obviously probative exhibits" in order for the court to conclude that the decision is rationally supported by substantial evidence. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The ALJ need not include in the RFC determination any limitations, restrictions, or opinions that have been properly rejected or that are otherwise unsupported by the record. *See McSwain v. Bowen*, 814 F.2d 617, 620 n.1 (11th Cir. 1987).

Additionally, there is no requirement that an ALJ's finding be based on the opinions of a treating or examining physician. *Thomas v. Colvin*, No. 12-227-N, 2013 WL 1218920, at *8 (S.D. Ala. Mar. 25, 2013); *see Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a

direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question [and][w]e have thus 'rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category.'") (quoting *Howard v. Barnhart,* 379 F.3d 945, 949 (10th Cir. 2004)); *see also Carson*, 440 F. App'x at 864 (upholding the ALJ's RFC determination because "the ALJ fully discussed and evaluated the medical evidence, [claimant's] testimony, and the effect each impairment had on [the claimant's] daily activities.").

### 1.   *State Agency Consultants*

Plaintiff first argues that it was improper for the ALJ to consider opinions from a state agency medical consultant and a physician who performed a consultative examination.[4] (Doc. 13 at 8-9, 11). Additionally, she argues that the ALJ improperly "executed" the opinion of the state agency physician in his determination of Plaintiff's RFC.

The regulations require the ALJ to consider findings from non-examining physicians, including state agency medical consultants. *See Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 848 (11th Cir. 2017) (citing 20 C.F.R. § 416.927(e)(2)(i)); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir.

---

[4] Plaintiff contends that the ALJ relied on the opinion of a chiropractor, but the record does not support this allegation. (Tr. 17).

2011); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991) (holding that an ALJ does not err in relying on a non-examining physician's report if it does not contradict the examining physician's report); *Jones v. Berryhill*, No. cv-117-106, 2018 WL 6537154, at *5 (S.D. Ga. Nov. 19, 2018) ("[F]indings of fact made by stage agency medical consultants regarding the nature and severity of an individual's impartments must be treated as expert opinion evidence of a non-examining source at the ALJ and AC levels of administrative review") (citing SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996)).

The record shows that the ALJ properly considered the opinions of Dr. Efren Baltazar, M.D., and Dr. Stephen Schwartz, M.D., in his review of the record as a whole. After discussing Plaintiff's subjective complaints and her treatment history, the ALJ found that the record supported a finding that the Plaintiff possessed the ability to perform light work. (Tr. 14, 16-17, 457-68, 473-84, 489-505, 513-17, 534-35, 556-68, 572-74, 586-604, 678-87, 820-27, 928-33, 1089-93, 1099-1101, 1109-14, 1116-28, 1137-49, 1154-56, 1168-88, 1253-54).

Contrary to the Plaintiff's argument, the ALJ found that neither consultative physicians' opinions were entitled to great weight, as both physicians found Plaintiff was able to perform medium work. (Tr. 17, 70-71, 1116-28). The ALJ found that Dr. Schwartz was entitled to partial weight because he found that she could sit for 6 hours of an 8-hour day, and could stand and walk for 3 hours of an 8-hour day. (Tr.

17). The ALJ found that consistent with records that that Plaintiff had "normal strength, balance, gait, reflexes and musculoskeletal findings." (Tr. 17, 506-30). The ALJ also credited Dr. Baltazar's opinion insofar as Plaintiff should be limited in her exposure to environmental conditions. (Tr. 16). In doing so, the ALJ noted that the record contained no functional limitations related to Plaintiff's migraines. This limitation inured to Plaintiff's benefit as the ALJ gave the Plaintiff the benefit of the doubt in regard to her subjective complaints regarding her migraines. (Tr. 16). Accordingly, the Plaintiff has not shown that the ALJ erred in considering Dr. Baltazar and Dr. Schwartz's opinions and crediting these opinions with only partial and little weight.

## 2. *Conservative Treatment and Discrediting Plaintiff's Subjective Complaints of Pain*

Plaintiff also contends that the ALJ erred in disregarding her subjective complaints regarding her pain. Section 416.929 provides in part that in determining whether a claimant is disabled, the commissioner should "consider all [of the claimant's] symptoms, including pain, and the extent to which [their] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R § 416.929. The Eleventh Circuit had adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively

> determined medical condition must be of severity which can reasonably
> be expected to give rise to the alleged pain.

*Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir. 1986); *see also Wilson*, 284 F.3d at 1225.

"[B]oth the regulations and the eleventh circuit's standard require objective medical evidence of a condition that could be expected to cause the pain alleged, but neither requires objective proof of pain itself." *Elam*, 921 F.2d at 1216. The Eleventh Circuit has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (citing *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987)). The absence of evidence to support the claim of severity is a factor that can be considered by ALJs, however. *Id.*; *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Notably, "[i]f proof of disability is based upon subjective evidence and a credibility determination is, therefore, crucial to the decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (citation and quotation marks omitted); *MacGregor*, 786 F.2d at 1054 ("If the Commissioner refuses to credit" the subjective testimony of the Plaintiff concerning pain "he must do so explicitly and give reasons for that decision. . . . Where he fails to do so we hold as a matter of law that he has accepted the testimony as true." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The reasons articulated by the

ALJ must be based upon substantial evidence. *Jones v. Dep't. of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).

In the present case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 14). But the ALJ concluded that the Plaintiff's subjective testimony regarding the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence. (Tr. 14, 16). The ALJ noted that Plaintiff alleged she was in pain every day and could not take medication for the pain. The ALJ properly considered results from clinical examinations, diagnostic studies, medical records, and physical therapy notes, which revealed that the objective medical findings did not support the Plaintiff's claim. (Tr. 457-68, 473-84, 489-505, 513-17, 534-35, 556-68, 572-74, 586-604, 678-87, 820-27, 928-33, 1089-93, 1099-1101, 1109-14, 1116-28, 1137-49, 1154-56, 1168-88, 1253-54).

In determining that Plaintiff's testimony was not entirely supported by the evidence, the ALJ properly relied on the history of Plaintiff's conservative treatment for her conditions. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (holding ALJ may consider treatment that is "entirely conservative in nature" in discrediting a claimant's testimony); *Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x. 862, 873 (11th Cir. 2016) (same); *Miller v. Astrue*, No. 8:07-cv-2074, 2009 WL 35167, at *5 (M.D. Fla. Jan. 6, 2009) (same); *Woodum v. Astrue*, No. 8:07-cv-404, 2008 WL

759310, at *3 (M.D. Fla. Mar. 20, 2008) (noting that the ALJ properly considered that "limited and conservative treatment . . . is inconsistent with the medical response that would be expected if the physician(s) found the symptoms and limitations to be as severe as reported by the claimant"). The ALJ noted that in Plaintiff's routine physical examinations and pharmaceutical refills through Eglin Air Force Base, there was no mention of Plaintiff's symptoms or treatment for complaints related to the alleged symptoms.[5] (Tr. 16, 565-83, 586-613). Additionally, Dr. Fawaz's treatment for Plaintiff's lumbar and cervical pain consisted of medication and injections, as well as a referral to physical therapy. (Tr. 485-505).

The ALJ also found that, as part of her conservative treatment for her mild cervical and lumbar spine pain, Plaintiff attended physical therapy. (Tr. 1087-1103). She stopped attending physical therapy, however, because she had completed all that was required. (Tr. 1104-07, 1089). The ALJ noted that as a result "there is little useful evidence regarding the [Plaintiff's] response to appropriate treatment or the residual impact of her symptoms on her work related function." (Tr. 17).

Additionally, the ALJ noted that, despite Plaintiff's claim her pain was always at least 7/10—she had not been hospitalized for the pain or for any symptom of her

---

[5] Plaintiff's claim that the damage to her liver and kidney prevent her from taking medication is contradicted by medical records that show Plaintiff was prescribed medication in 2015 through 2016. (Tr. 513-16).

impairment for twelve months preceding the hearing. (Tr. 17, 33). Moreover, Plaintiff rejected a referral to a neurologist for her complaints regarding her migraines. (Tr. 1113). She also refused to undergo surgery for her carpal tunnel syndrome. (Tr. 17, 35). The ALJ indicated that the Plaintiff's history of conservative treatment suggested that the impairments were not as severe as she contended, but that he would "give her the benefit of the doubt" in determining her RFC. (Tr. 17).

To the extent Plaintiff argues that Dr. Fawaz's treatment indicates that the Plaintiff is disabled, the undersigned is not persuaded. After her 2014 automobile accident, Dr. Fawaz wrote two notes (one in May 2014 and the other in June 2014) on the Plaintiff's behalf asking that the Plaintiff be excused from school until August 2014.[6] (Tr. 405-06). In September 2014, however, Dr. Fawaz refused to write a letter stating that the Plaintiff required assistance from her daughter.[7] (Tr. 494). Dr. Fawaz declined to write such a letter because she believed that Plaintiff could take care of

---

[6] Plaintiff also included in her exhibits an additional letter from Dr. Fawaz to her school informing the school that Plaintiff had been involved in a motor vehicle accident, it *may be necessary* for Plaintiff to have a six month leave of absence, and that Dr. Fawaz believed Plaintiff's symptoms were *temporary*. (Tr. 407) (emphasis added). The date was handwritten across the top of the document, which indicated this letter was dated in September 2014. Plaintiff's records, however, have several handwritten notes on them, and the undersigned is unable to determine if the date is correct.

[7] Plaintiff's daughter was serving in the Army and the proposed letter was requested to submit to the Army along with a request that the Army station Plaintiff's daughter closer to the Plaintiff. (Tr. 43, 494).

herself, was able to drive, and did not need assistance with day-to-day activities. (Tr. 494). As to Dr. Fawaz's two notes requesting that the Plaintiff be excused from school, they are insufficient to establish a disability because these letters indicate that the Plaintiff's condition was temporary and that she needed to be excused from school only for approximately three months. *See* 42 U.S.C § 423(d)(1)(A) ("The term "disability" means inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of of not *less than 12 months*[.]") (emphasis added); *Barnhart v. Walton*, 535 U.S. 212, 217, 122 S. Ct. 1265, 1269 (2002) (holding a claimant's impairments and inability to work must last for continuous period of at least twelve months). Moreover, Dr. Fawaz's objective medical findings, as well as  the routine and conservative treatment provided by Dr. Fawaz support the ALJ's determination that Plaintiff's subjective complaints were not entirely credible. (Tr. 489-93, 459-97).

Also, in his determination that the Plaintiff was not entirely credible, the ALJ noted that her routine medical records showed consistently normal results despite her reported history of pain. (Tr. 474-75, 512-14, 1112, 1117). The ALJ also found that Plaintiff engaged in daily activities such as doing housework and shopping. (Tr.

17, 31-47, 494, 1128). This evidence further indicated that Plaintiff could be gainfully employed.

The ALJ's evaluation of the medical records and physical therapy notes supported his determination that Plaintiff's subjective statements were not entirely credible. These records as well as the credible portions of Plaintiff's subjective testimony supported the ALJ's determination that Plaintiff has the RFC to perform light work as defined by 20 C.F.R. § 416.967(b)—except that she cannot: (1) climb ladders, ropes, or scaffolds; (2) work around unprotected heights or dangerous equipment; and (3) tolerate more than occasional exposure to temperature extremes, humidity, wetness, and concentrated environmental pollutants—is supported by substantial evidence.

C. **Plaintiff's Ability to do Past Relevant Work and Other Work in National Economy that Accommodate Plaintiff's RFC**

Plaintiff also contends that the ALJ erred by: (1) determining that the Plaintiff could perform her past relevant work; (2) relying on the VE classification of Plaintiff's past relevant work as "light work"; and (3) finding that jobs—which accommodate Plaintiff's limitations—exists in significant numbers in the national economy. (Doc. 13 at 15, 17, 28-29).

1. *Step 4: Ability to do Past Relevant Work*

Plaintiff argues that the ALJ erred in determining that she could perform past relevant work insofar as he relied on the VE's purportedly erroneous classification

that her jobs required "light exertion." (Tr. 15). In essence, Plaintiff's argument is that the ALJ erred because Plaintiff cannot return to her specific prior jobs. This argument is without merit.

A claimant bears the burden of proving that she cannot perform past relevant work, not merely that she cannot return to her prior employment. *Jackson v. Astrue*, 827 F. Supp.2d 1337, 1346 (S.D. Fla. 2011); *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986) (quoting *DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983)); *Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir. 1990); *Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987); *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986) (holding "[the] claimant has the burden of proving an inability to return to his former *type of work* and not just to his former job"). Thus, "[i]f a Social Security claimant 'can do [the] kind of work' he had done in the past, he will be found not disabled." *Jackson*, 801 F.2d at 1293 (citing 20 C.F.R. §§ 404.1520(e), 416.920(e) (1986)).

The VE testified that in the national economy, cashiers and customer service representatives are jobs that can be performed with light exertion. (Tr. 46, 47). Thus, even if Plaintiff's past jobs were performed at a greater level of exertion, Plaintiff had to show that she cannot perform jobs as they are generally performed in the national economy. Because Plaintiff solely relies on her inability to perform specific jobs she previously performed, Plaintiff has not carried her burden of demonstrating

that she cannot perform these kind of jobs as they are generally performed at the national level. (Doc 13 at 15). Plaintiff, therefore, has not established that the ALJ erred.

### 2.    *Step Five: Ability to Perform Other Jobs*

Plaintiff further argues that the ALJ erred in his assessment that she can make a successful adjustment to other work.  Specifically, Plaintiff contends that the ALJ erred in relying on the VE's opinion because the VE did not consider Plaintiff's limitation:  she only occasionally can be exposed to temperature extremes, humidity, wetness, and concentrated environmental pollutants. (Doc. 13 at 17, 28-29). She also argues that the jobs suggested by the VE (information clerk, mail clerk or mail sorter, parking lot attendant, and office helper) would require the Plaintiff to perform at an exertion level that is inconsistent with her true RFC. (Doc. 28-29).

As discussed above, the ALJ's determination of Plaintiff's RFC is supported by substantial evidence. Furthermore, the VE testified that several jobs existed in the national market based on Plaintiff's RFC as determined by the ALJ. Plaintiff's argument that these jobs exceed her RFC, therefore, is without merit. Additionally, Plaintiff has not cited any authority or evidence in support of her contention that these jobs require exertion that exceed the Plaintiff's RFC. By failing to do so, Plaintiff has waived this argument. *See N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without

supporting arguments and citation to authorities, are generally deemed to be waived."); *Continental Technical Servs., Inc. v. Rockwell Int'l. Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) (citing *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987)).

Accordingly, Plaintiff has not established any error in the ALJ's determinations at steps four or five of the sequential process.

## D.   <u>Prejudice</u>

Plaintiff next contends that the ALJ was biased. Plaintiff raises four issues that she contends are sufficiently severe to warrant reversal of the ALJ.

"The Social Security Act requires that a claimant's hearing be both full and fair." *Fries v. Comm'r of Soc. Sec. Admin.*, 196 F. App'x 827, 830 (11th Cir 2006) (citing *Miles v. Chater*, 84 F.3d 1397 (11th Cir. 1996)). "The ALJ plays a crucial role in the disability review process. . . . The impartiality of the ALJ is thus integral to the integrity of the system." *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996) (citing *Johnson v. Miss.*, 403 U.S. 212, 216, 91 S. Ct. 1778, 1780 (1971)). Thus, a suggestion of judicial bias is a strong accusation, not to be taken lightly. *Beard v. TMG Life Ins. Co.*, 966 F.2d 1441, 1441 (4th Cir. 1991) (unpublished opinion).

There is a presumption that those who act as adjudicators for administrative agencies are honest and serve with integrity. *Schweiker v. McClure*, 456 U.S. 188, 195-96, 102 S. Ct. 1665, 1670 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct.

1456, 1464-65 (1975); *Johnson v. U.S. Dep't. of Agric.*, 734 F.2d 774, 783 (11th Cir. 1984); *Cates v. Comm'r of Soc. Sec.*, No. 17-14721, 2018 WL 5778211, at \*4 (11th Cir. Nov. 2, 2018) (unpublished opinion) (holding that the court "will presume that an ALJ—like other judicial or quasi-judicial officers—is not biased."). The burden to overcome this presumptions rests on the party alleging bias. *Schweiker*, 456 U.S. at 195-96, 102 S. Ct. at 1669-70; *Withrow*, 421 U.S. at 47-48, 95 S. Ct. at 1464-65; *Cate*, 2018 WL 5778211, at \*4. The party alleging bias must come forward with convincing evidence that "a risk of actual bias or prejudgment" is present. *Schweiker*, 456 U.S. at 195-96, 456 S. Ct. at 1670. Finally, for the alleged bias to be disqualifying, it must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S. Ct. 1798, 1710 (1966). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994); *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) ("Adverse rulings alone do not demonstrate judicial bias."). But if a decision is not supported by the evidence, that *may* be evidence of bias or partiality. *See Miles*, 84 F.3d at 1401.

### 1.   *Rescheduling the Hearing Date*

Plaintiff alleges that she suffered prejudice when the ALJ rescheduled her hearing from February 2017 to May 4, 2017, due to the ALJ not having Plaintiff's

complete medical records. The hallmark of due process is that the Plaintiff be afforded notice and an opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976). Although there was a three-month delay between her initial hearing and the re-scheduled hearing, Plaintiff has not shown how rescheduling caused her prejudice. The reason put forth by the ALJ for the delay—that he needed the Plaintiff's medical records—is a facially legitimate reason. Plaintiff has not shown that this reason was false.

Furthermore, when the hearing finally occurred, the ALJ was prepared with the medical records that the Plaintiff submitted. Plaintiff claimed these records were vital to her case. When a claimant appears *pro se*, the ALJ has a heightened duty to develop the record to ensure that all relevant facts are considered. *See Cowart*, 662 F.2d at 735 (holding that when a claimant is proceeding *pro se* the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts") (citing *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978)); *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. Unit B 1981). Assuming that these medical records were relevant to the Plaintiff's claims, a short delay to ensure that the ALJ possessed the records and had time to review them was not unreasonable. Indeed, due process required that the ALJ take the time to develop the record and familiarize himself with the facts. *See Cowart*, 652 F.2d at 737. An ALJ cannot be faulted for doing what the law requires.

## 2.    *Witness Testimony and Development of the Record*

Plaintiff also contends that the ALJ was biased in that his decision did not mention her daughter's testimony or over 150 pages of medical records.

The Eleventh Circuit has held that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as [the court can] conclude that the ALJ considered the claimant's medical condition as a whole." *Parks v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 852 (11th Cir. 2015) (quoting *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (internal quotations and citations omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210-11 (11th Cir. 2005). Because the ALJ made express findings that Plaintiff's testimony was not entirely consistent with the evidence, it is obvious that he also rejected the similar testimony of her daughter. *See Clyburn v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 892, 894-95 (11th Cir. 2014) ("Because the ALJ expressly rejected as not credible Clyburn's testimony about the severity of her pain and the extent of her limitations, he impliedly rejected the statements in [her cousin's] affidavit as well.") (citing *Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981)); *Iordan v. Comm'r, Soc. Sec. Admin.*, 579 F. App'x 775, 779 (11th Cir. 2014). This is obvious in cases such as Plaintiff's when the additional testimony is duplicative of the Plaintiff's testimony and does not offer any significant or additional information regarding the Plaintiff's conditions. *See Iordan*, 579 F. App'x at 779.

In addition, Plaintiff has failed to show how she was prejudiced by the ALJ's failure to discuss her daughter's testimony.[8]

As to medical records the ALJ purportedly did not consider, Plaintiff has failed to identify any such records. She also has not shown that any such records related to the relevant period or the relevant conditions. Contrary to Plaintiff's assertion, the ALJ's decision specifically cites and discusses many of the medical records that were submitted by Plaintiff's medical providers. (Tr. 16-17). Therefore, she has failed to carry her burden of showing that the ALJ did not consider relevant evidence and that this caused her prejudice.

### 3. *Hypothetical Questions About a "Normal Woman"*

Plaintiff also contends that the language the ALJ used when questioning the VE demonstrates the bias of the ALJ and the VE. The Plaintiff alleges that the ALJ used the phrase "any normal woman" when he posed a hypothetical question to the

---

[8] The Plaintiff requests outright reversal of the ALJ's determination for the ALJ's failure to consider her daughter's testimony; however, as this would require the ALJ to make a credibility determination, it would be more appropriate for a remand. But remanding the case on this issue would simply waste administrative and judicial resources and would result in the fairly ministerial act of the ALJ rejecting Plaintiff's daughter's testimony on the same basis that he rejected Plaintiff's—namely, that Plaintiff's statements are not entirely consistent with the Plaintiff's medical history. *See Iordan*, 579 F. App'x at 779 (holding that remanding the case solely to require the ALJ to address the testimony of the claimant's fiancé "would be a waste of judicial resources, because his statements did not undermine the substantial medical evidence supporting the ALJ's disability determination").

VE. (Doc. 13 at 13). Further, Plaintiff alleges that the VE's testimony was an "obviously bought and paid for circus display in a formal hearing" insofar as the VE opined that an individual with the Plaintiff's physical impairments could perform light work. Plaintiff also alleges that the VE was professionally inept.

With respect to Plaintiff's first allegation of bias, the transcript of the hearing does not indicate that the ALJ used this phrase at any point during his questioning of the VE. (Tr. 46-49). Even if the ALJ had used the phrase "any normal woman," the ALJ's hypothetical contains the list of impairments that were reasonably supported by the objective medical evidence. Further, Plaintiff's mere disagreement with the ALJ's decision—even in conjunction with the purported use of "normal woman"—does not establish that the ALJ was biased. *See Liteky*, 510 U.S. at 555, S. Ct. at 1157. Additionally, Plaintiff's mere disagreement with the VE's opinion does not establish bias, and Plaintiff's conclusory allegations are insufficient to overcome the presumption of honesty and integrity.

### 4. *Reopening Plaintiff's 2006 Determination*

Finally, Plaintiff contends that ALJ was biased insofar as he did not reopen the agency's 2007 determination of Plaintiff's 2006 application for disability. This, she claims, means that the ALJ's decision is "fruit of the poisonous tree."

If a claimant does not request further review of an unfavorable decision in the administrative process, the claimant loses her right to further review and the

determination becomes final. *See* 20 C.F.R. § 146.1487. Upon its own initiative or by request from the claimant, the final determination may be reopened if one of the conditions of 20 C.F.R. § 146.1488 is present. In the present case, Plaintiff did not ask the ALJ to reconsider her previous case nor did she at any point claim fraud or any other similar fault as required by 20 C.F.R. § 146.1488. Furthermore, the Plaintiff alleged in her SSI application that she was disabled as of May 1, 2014. (Tr. 192). Such a claim failed to give the ALJ any reason to reopen a previous determination, especially one entered approximately eight years prior.

Furthermore, as a general rule, federal courts lack jurisdiction to review an administrative decision not to reopen a previous claim for benefits. *See Califano v. Sanders*, 430 U.S. 99, 107-09, 97 S. Ct. 980, 985-86 (1977). "[A] decision refusing to reopen an earlier application is considered an interim decision not reviewable under §405(g)." *Cash v. Barnhart*, 327 F.3d 1252, 1256 (11th Cir. 2003) (citing *Loudermilk v. Barnhart*, 290 F.3d 1265, 1268 (11th Cir. 2002)); *see Byam v. Barnhart*, 336 F.3d 172, 180 (2d Cir. 2003) ("The Commissioner's decision not to reopen a prior determination is not a final decision for the purposes of § 405(g), and thus is generally unreviewable even if there was a hearing in the case.") (citation omitted).

Nevertheless, a federal court may review a decision not to reopen a disability determination if the Commissioner has either constructively reopened the case or if

a claimant has been denied due process. *Byam*, 336 F.3d at 180. A determination shall be deemed "reopened" if it is "reconsidered on the merits to any extent and at any administrative level." *Cherry v. Heckler*, 760 F.2d 1186, 1189 (11th Cir. 1985) (quoting *McGowan v. Harris*, 666 F.2d 60, 65 (4th Cir. 1981)). Review by this court is also permissible in "rare instances when the Secretary's denial of a petition to reopen is challenged on constitutional grounds." *Califano*, 430 U.S. at 109, 97 S. Ct. at 986; *see Sherrod v. Chater*, 74 F.3d 243, 245 (11th Cir. 1996); *Passopulos v. Sullivan*, 976 F.2d 642, 647 (11th Cir. 1992); *Callis v. Dep't. of Health & Human Servs.*, 877 F.2d 890, 891 (11th Cir. 1989). Accordingly, in the absence of either constructive reopening or a constitutional claim, the district court lacks jurisdiction to review a decision not to reopen. *Latona v. Schweiker*, 707 F.2d 79, 81 (2d Cir. 1983).

In this case, the Commissioner did not constructively reopen any prior disability determination. Although the ALJ notes that the Plaintiff's medical history suggests a history of cervical fusion in 2007, his review of the facts appears to be limited to the medical notes which showed that, despite this remote history, Plaintiff's cervical cord was "normal in caliber and signal intensity." A review of the ALJ's entire decision reveals that he did not reconsider the merits of the agency's 2007 decision regarding the Plaintiff's 2006 disability claim. Because Plaintiff has raised no constitutional challenge to the administrative proceedings below, this court

lacks jurisdiction to review the ALJ's decision not to reopen Plaintiff's previous claim for benefits. Moreover, Plaintiff has failed to show any evidence that this resulted in any bias against her.

###    E.    New Evidence

Finally, Plaintiff argues that the Commissioner's decision should be reversed because she supplied two new pieces of evidence,[9] which indicate that she is disabled.

Generally a claimant may present new evidence at each stage of the administrative proceeding, including to the district court. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260-61 (11th Cir. 2007). In order to more fully develop the record, 42 U.S.C. § 405(g) permits a district court to remand an application for benefits to the Commission by two methods, which are commonly referred to as "sentence four" and "sentence six" remands. *See Ingram*, 496 F.3d at 1261. Sentence six of section 405(g) provides that:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).

---

[9] Plaintiff submitted an opinion from Dr. Schievenin and a letter from the United States Department of Education informing the Plaintiff that her student loans were discharged due to her "total and permanent disability." (Doc. 13 at 32-33).

The Eleventh Circuit Court of Appeals has stated that sentence six is "the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court," as is the case at bar. *Id.* at 1267-68; *see Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S. Ct. 2658, 2664 (1990) (holding that remand pursuant to the sixth sentence of § 405(g) is "appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding"); *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987); *Caulder v. Bowen*, 791 F.2d 872, 876 (11th Cir. 1986); *Cherry*, 760 F.2d at 1192.

However, "[n]ot every discovery of new evidence, even if relevant and probative, will justify a remand to the Secretary" because "some evidence is of limited value and insufficient to justify the administrative costs and delay of a new hearing." *Caulder*, 791 F.2d at 876. Thus, in order to establish that remand is warranted pursuant to sentence six of § 405(g), a Plaintiff must establish that: (1) the evidence is new and noncumulative; (2) the evidence is material such that a reasonable probability exists that it would change the administrative result; and (3) there was good cause for the Plaintiff's failure to submit the evidence at the administrative level. *See Falge*, 150 F.3d at 1323; *Caulder*, 791 F.2d at 877; *Cherry*, 760 F.2d at 1192.

With respect to both documents, Plaintiff has shown that there was good cause for her failure to submit the evidence at the administrative level and at the appeal level. Good cause exists when the evidence did not exist at the time of the administrative proceedings. *Sullivan*, 496 U.S.at 626, 110 S. Ct. at 2664. Both the opinion of Dr. Schievenin and the U.S. Department of Education's loan forgiveness letter were created after the ALJ's decision in May 2017, and after the Appeals Council denied review in November 2017.

 Additionally, Dr. Schievenin's document likely is not cumulative because, unlike the other medical records in the case, Dr. Schievenin's opinion indicates that Plaintiff's conditions limit Plaintiff's ability to work insofar as she is "unable to walk, stand, or sit for long periods of time." (Doc. 13 at 32). Similarly, the letter from the Department of Education also suggests that the Plaintiff is disabled. Thus, the core issue with the Department of Education's letter and Dr. Schievenin's opinion is whether these are material.

Evidence is material when reasonable probability exists that it would change the administrative result. *Falge*, 150 F.3d at 1323; *Caulder*, 791 F.2d at 877; *Cherry*, 760 F.2d at 1192. Thus, to be material the new evidence must be chronologically relevant. *See Wilson v. Apfel*, 179 F.3d 1276, 129 (11th Cir. 1999) ("We review the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's

decision."). Notably, the materiality requirement is not rebutted by the Commissioner's statement that the new evidence would not ultimately change the decision, because such a statement is not in the certified record, and therefore, carries little weight. *Caulder*, 791 F.2d at 877; *Cherry*, 760 F.2d at 1194.

### 1.    *Dr. Schievenin's Opinion*

The Commissioner argues that the Dr. Schievenin's opinion is not material because Plaintiff has failed to show that it is temporally relevant to the period before the ALJ's May 2017 decision. (Doc. 14 at 11). Dr. Schievenin's opinion is dated February 2018. (Doc. 13 at 32). On the form, Dr. Schievenin checked a box that stated the Plaintiff's impairment "lasted *or is expected to last* for a continuous period of at least 60 months[.]" (Doc. 13 at 32). Plaintiff attempts to argue that this document is temporally relevant because Dr. Schievenin looked only at the records before the ALJ. (Doc. 13 at 7). The Plaintiff bears the burden to establish that remand is proper. Although Dr. Schievenin looked only at the record as it existed before the ALJ, there is no indication as to whether his opinion relates to the relevant time before May 2017. Accordingly, Plaintiff has failed to carry her burden to show that the evidence is material.

Furthermore, assuming the Plaintiff had met her burden to show that Dr. Schievenin's opinion related to the relevant period, Plaintiff has not shown a reasonable probability that this evidence would alter the ALJ's determination that

Plaintiff was not disabled.  This is because Dr. Schievenin's opinion is not supported by objective medical evidence and is inconsistent with the record as a whole. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x. 830, 832 (11th Cir. 2011) ("Where the medical record contained a retrospective diagnosis, that is a physician's post-insured-date opinion that claimant suffered a disabled condition prior to the insured date, we affirm only when that opinion was consistent with pre-insured-date medical evidence."). Dr. Schievenin found that Plaintiff's limitations were "moderately severe", she was not limited in her activities of daily living, and she was not able to stand, sit, or walk for long periods of time. (Doc. 13 at 32).

Medical evidence from the relevant period, however, indicated that Plaintiff had "overall normal findings, including normal strength, balance, gait, reflexes, and musculoskeletal findings." (Tr. 515-16, 520-21). Plaintiff had not been admitted to the hospital due to her pain and had a history of conservative treatment. (Tr. 33, 460, 489-502, 1089-93). Thus, Plaintiff has failed to meet her burden to show that Dr. Schievenin's opinion had a reasonable probability of changing the result of the administrative hearing.[10] Accordingly, remand for the ALJ to consider such evidence is unwarranted. *Caulder*, 791 F.2d at 876 (noting that "some evidence is of limited value and insufficient to justify the administrative costs and delay of a new

---

[10] The form that Dr. Schievenin used appears to be a form used by individuals seeking loan forgiveness from the U.S. Department of Education.

hearing"); *see also Iordan*, 579 F. App'x at 779 (finding that remand was unnecessary and would waste judicial resources when the ALJ would only be required to explicitly address evidence that did not undermine the substantial medical evidence supporting ALJ's disability determination).

### 2.   *Department of Education Letter*

With respect to the Letter from the Department of Education, it is well settled in the Eleventh Circuit that the Commissioner must ultimately make its disability determination based on social security law, not the rules of other agencies. 20 C.F.R. §§ 404.1504, 416.904; *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x. 935, 939-40 (11th Cir. 2011); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983). Nonetheless, findings of disabilities by other agencies are generally entitled to great weight. *Bloodsworth*, 703 F.2d at 1241. Thus, although the findings of other agencies are not binding on the Commissioner, evidence of a disability decision by another agency cannot be ignored. Indeed, many courts in looking at whether to remand have looked at whether the standards are similar or dissimilar. S*ee Flacon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984) (holding that similarity between Florida workers compensation disability law required that the ALJ give "proper" weight to the Florida determination); *Werner*, 421 F. App'x at 940 ("Without further evidence showing that the Florida DVR uses criteria similar to the relevant

regulations for DIB and SSI determination, the letter was insufficient to call the ALJ's decision into question").

The Department of Education's standard for determining disability is similar to the Social Security Standard. Compare 34 C.F.R. § 685.213 (2013) ("Totally and permanently disabled: The condition of an individual who (1) [i]s unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that: (i) can be expected to result in death, (ii) has lasted for a continuous period of not less than 60 months; or can be expected to last for a continuous period of not less than 60 months."), with 42 U.S.C. § 1382c(a)(3)(A) and 42 U.S.C. § 423(c)(5)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months.").

In this case, however, the Plaintiff failed to establish that the Department of Education's determination of disability was related to the relevant period. The letter from the Department of Education stated that Plaintiff's application and loan forgiveness was "effective 03/26/2018." (Doc. 13 at 33). Thus, this letter was issued almost a year after the ALJ's decision and does not indicate that the Department of Education found that Plaintiff was disabled prior to the ALJ's decision in May 2017.

Additionally, the Department of Education regulation that defines totally and permanently disabled" states that such a person must have an impairment that "[h]as lasted for a continuous period of not less than 60 months" or "[c]an be expected to last for a continuous period of not less than 60 months." 34 C.F.R. § 685.102(b)(1). As discussed above, Dr. Schievenin's opinion, which may have been the basis for the Department of Education's decision, does not indicate that it applies to the relevant period. Because Plaintiff bears the burden of showing that the evidence is material, this ambiguity as to whether the Department of Education letter applies to the relevant time frame is fatal to Plaintiff's argument that there would be a reasonable probability that the administrative level decision would change. Accordingly, Plaintiff has failed to show that remand is warranted.

## VI. Conclusion

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); *Lewis*, 125 F. 3d at 1439; *Foote*, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, the undersigned respectfully **RECOMMENDS** that:

1.    The decision of the Commissioner be **AFFIRMED**, and this action be **DISMISSED**.

2.    **JUDGMENT** be entered, pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the decision of the Commissioner.

3.    That the Clerk of the Court be directed to close the file.

At Panama City, Florida this 27th day of February, 2019.

/s/ *Michael J. Frank*

**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**